**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4515-19
             A-4594-19

JOHN J. PJETERNIKAJ, SR.,
535 HIGH MOUNTAIN
ASSOCIATES, LLC, and
PROSPECT PLAZA
CONDOMINIUM ASSOCIATION,

      Plaintiffs-Respondents,

v.

BETTY M. PETERS, MICHELLE
PETERS, 210 CHARLESTON,
LLC, DEAN AND DEBRA
YANOVER, and PAUL K.
MILLER,

      Defendants-Respondents,

and

GEORGE SALIBA and 535 HIGH
MOUNTAIN ROAD, LLC,

      Defendants-Appellants.

_____

JOHN J. PJETERNIKAJ, SR.,
535 HIGH MOUNTAIN

ASSOCIATES, LLC,
PROSPECT PLAZA
CONDOMINIUM ASSOCIATION,

      Plaintiffs-Respondents,

v.

BETTY M. PETERS, MICHELLE
PETERS, 210 CHARLESTON,
LLC, DEAN AND DEBRA
YANOVER, GEORGE SALIBA,
and 535 HIGH MOUNTAIN
ROAD, LLC,

      Defendants-Respondents,

and

PAUL K. MILLER,

      Defendant-Appellant.

_____

Argued November 9, 2021 – Decided January 3, 2022

Before Judges Currier, DeAlmeida, and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. C-000115-19.

Kevin J. Kotch argued the cause for appellants George Saliba, 535 High Mountain Road, LLC, in A-4515-19, and Paul K. Miller in A-4594-19 (Ferrara Law Group, PC, attorneys; Ralph P. Ferrara and Kevin J. Kotch, of counsel and on the briefs).

Anthony M. Rainone argued the cause for respondents John J. Pjeternikaj, Sr., 535 High Mountain Associates, LLC, and Prospect Plaza Condominium Association (Brach Eichler, LLC, attorneys; Lucas A. Markowitz, on the briefs).

Jared M. Lans argued the cause for respondents Betty M. Peters, Michele Peters, and 210 Charleston, LLC.

PER CURIAM

These consolidated appeals arise out of a dispute between the parties over a special assessment imposed by plaintiff Prospect Plaza Condominium Association (Prospect Plaza) on defendants as either individuals or entities who owned condominiums. The case proceeded to arbitration and the arbitrator entered a final award in favor of plaintiffs John J. Pjeternikaj, Sr. and High Mountain Associates (High Mountain). Thereafter, Pjeternikaj and High Mountain filed an action in Superior Court to modify and confirm the arbitration award. Defendants opposed the application. The verified complaint was later amended to include Prospect Plaza as a plaintiff.

The trial court entered final judgment in favor of Pjeternikaj, High Mountain, and Prospect Plaza, confirming the arbitration award but modifying it to include the correct owners for each commercial condominium unit.

On appeal, defendants seek to reverse the trial court's order and vacate the arbitration award, contending errors in the administration of the arbitration

3                                                                                    A-4515-19

hearing and in the modification and confirmation of the award. Because there were errors in the conduct of the arbitration hearing, including improper representation of parties and corporate entities, we conclude the award was procured by "other undue means." See N.J.S.A. 2A:23B-23(a)(1). Therefore, we vacate the arbitration award and reverse the trial court's order confirming it.

Pjeternikaj was a principal officer of High Mountain and the registered agent of Prospect Plaza. In a bank foreclosure, High Mountain became the owner of eighty-four percent of the commercial condominium association, which it described as "dilapidated, dangerous, [and] out-of-date."

At the time of the transaction with High Mountain, defendant Paul Miller owned a unit which operated as a musical instrument store named Millers Saxophone Shop. Defendant 535 High Mountain Road, LLC, of which defendant George Saliba was the sole member, owned a unit which was leased to Saliba's wife and operated as a dental practice – Crown Dental. Defendants Dean and Debra Yanover owned a unit in which they operated a hair salon – The Color Palette.

Defendant Betty Peters[1] owned a unit which served as an office for Peters Chemical Company. Defendant Michele Peters, Betty's daughter, was the sole member of 210 Charleston LLC which owned a unit housing the Law Office of Michele A. Peters.[2]

In 2018, Pjeternikaj and High Mountain called a special meeting of the board of directors of Prospect Plaza and the unit owners to introduce themselves, to terminate the current board of directors, and to confirm the new board of directors. At the special meeting, the newly appointed board of directors of Prospect Plaza (Board), which consisted entirely of Pjeternikaj's family members, passed a "special assessment" to finance repairs and upgrades to the property. High Mountain was responsible for eighty-four percent of the assessment and defendants were responsible for the remaining share.

---

[1] Betty died in January 2021.

[2] In the arbitration and trial court proceedings, the parties disputed Michele's right to represent other parties as an attorney. The record is not clear as to her status. During argument before the trial court, she stated that at one time the condominium unit owned by 210 Charleston LLC was the location of her law practice. In her counselled appellate brief, she states that "at all relevant times, [she was] a licensed New Jersey attorney; however, at times, in retired status."

A-4515-19

Defendants disagreed with the special assessment, asserting the repairs were either "too expensive" or "unnecessary."

Pursuant to the arbitration provision of the commercial condominium association's by-laws, Michele commenced an arbitration proceeding with the American Arbitration Association (AAA) against Pjeternikaj and High Mountain, disputing the special assessment. Michele identified herself as an attorney with a P.O. Box in Oregon as her address, representing herself, her mother Betty, Miller, Saliba, and the Yanovers as claimants in the action.

Shortly thereafter, AAA, Michele, and Anthony Rainone – counsel for Pjeternikaj and High Mountain – participated in a conference call where Rainone advised AAA that Michele was not licensed to practice law in New Jersey and could not represent the other claimants. It is unclear what AAA specifically advised Michele to do about this issue other than that she could not proceed on any claimant's behalf but herself.

Several weeks later, Michele filed an amended demand for arbitration listing herself and Betty as the only claimants. She submitted a letter to AAA signed by Betty and authorizing Michele to speak and act on her behalf in the arbitration proceedings.

A-4515-19

In response, AAA emailed a letter to the parties notifying them that AAA would be utilizing a "Pro Se Case Administration Team" for the matter. The letter, addressed to Michele, Saliba, the Yanovers, Miller, and Rainone, listed the addresses of all claimants as Michele's P.O. Box in Oregon.

On the same date, Rainone emailed AAA, again stating that Michele could not represent her mother Betty because she was not licensed to practice law in New Jersey. Rainone also advised that Saliba, the Yanovers, and Miller had not filed separate demands for arbitration. He requested the notice of docketing so his clients could answer and file counterclaims. Further, he claimed the matter should not be given "special" handling as a pro se case because Pjeternikaj and High Mountain were represented by counsel and "[n]o special privileges or treatment should be accorded to Michele Peters in this matter who still advertises herself as a New Jersey licensed attorney when in fact she is not."

AAA responded, stating it "has determined this matter shall be handled by the Pro Se Team because Michele Peters is appearing on behalf of herself. The fact that she is . . . licensed to practice law does not impact our decisions as she is still appearing pro se."

When Rainone again raised the issue that no other claimants had filed demands for arbitration, AAA informed him they had received "confirmation

from the Yanovers and the Millers advising of their intention to participate in this arbitration." The Yanovers sent an email to AAA stating "[w]e will be representing ourselves during this arbitration"; Miller sent an email to AAA stating "[m]y wife and I will be representing ourselves during this arbitration."

The record is unclear whether Saliba also notified AAA that he would be representing himself. However, during discovery he sent an email to AAA stating, "the reasons that persuaded me to seek Arbitration are numerous, maybe stating some facts and incidents might get you in the same status that led me & the other minority owners to file for arbitration."

Initially, AAA informed Rainone that when an amended demand was filed listing the Yanovers, Miller, and Saliba as parties, Pjeternikaj and High Mountain would be granted fourteen days to file a response. The correspondence stated: "[u]ntil an [a]mended [d]emand is filed, the Yanovers, Millers, and Mr. Salib[a] will not be named as parties."

A few days later, AAA emailed Michele, copying Rainone, stating:

> It appears the original Demand (attached) provided all the named parties; however, the subsequent Amended Demand (attached) only listed you and your mother as the Claimants.
>
> To ensure an accurate record, please file an Amended Demand confirming the additional Claimants.

A-4515-19

On the same date, AAA emailed Rainone, copying Michele, and stating that Michele "filed an Amended Demand earlier today confirming the Yanovers, Millers, and Mr. Salib[a] as co-[c]laimants." The email further explained that "[t]he Rules do not require each of the additional co-Claimants to file individual Demands."

Thereafter, Pjeternikaj and High Mountain filed their answer and counterclaim for the full payment of the special assessment.

In a later response, AAA emailed Michele, the Yanovers, Miller, Saliba, and Rainone, listing the case caption as "Betty Peters & Michele Peters; Dean & Debra Yanover; Paul Miller; George Salib[a] vs. John Pjeternikaj Sr., 535 High Mountain Associates, LLC." None of the parties objected to AAA's case caption.

An arbitrator was appointed. During discovery, Miller, the Yanovers, and Saliba submitted statements explaining their reasons for their disagreement with the special assessments. A hearing took place over two days.[3]

In a one-page arbitration award dated August 21, 2019, the arbitrator found in favor of Pjeternikaj and High Mountain, stating they legally elected

_____

[3] We were not provided with the transcripts of the arbitration hearing. The record does not advise who testified, if anyone, and what the testimony was.

their own representatives to the board of directors after acquiring title to the property and legally enacted the special assessment. The $422,348.58 award was granted against defendants as the award "set forward on pages 27-28 of [Pjeternikaj and High Mountain's] post hearing brief" as:

| | |
|---|---|
| Miller's Saxophone Shops | $38,372.07 |
| The Color Palette Salon | $64,976.71 |
| Hitesh Bhatt[4] | $64,976.71 |
| Crown Dental, LLC | $64,976.71 |
| Law Office of Michele Peters, P.C. | $88,255.76 |
| Peters Chemical Company | $100,790.64 |

The arbitrator ordered the payment of the award in three monthly installments with the first installment due within thirty days. In their certifications opposing the summary action to confirm the arbitration award, Saliba, the Yanovers, and Miller stated they were never "provided with the documentation that supported the award."

In their first amended verified complaint, plaintiffs alleged that the "[a]rbitrator did not properly name the true [p]arties in interest in the [a]rbitration [a]ward." Plaintiffs contended it "was a typographical mistake, not a substantive one," and proposed the award be modified as follows:

| | |
|---|---|
| Paul K. Miller | $38, 372.07 |

---

[4] The record gives no information regarding the identity of Hitesh Bhatt other than as the owner of unit 205. There is no indication that Bhatt participated in either the arbitration or the Superior Court proceedings.

A-4515-19

| | |
|---|---|
| Dean and Debra Yanover | $64,976.71 |
| Hitesh Bhatt/Bhatt Foundation Inc. | $64,976.71 |
| George Saliba/535 High Mountain Road LLC | $64,976.71 |
| The Law Office of Michele Peters P.C./210 Charleston | $88,255.76 |
| Betty M. Peters | $100,790.64 |

Plaintiffs further asserted that the identification of the parties in the arbitration award was "an evident mistake in the description of a person, thing, or property referred to in the award." They claimed that "[t]he names of the parties mentioned in the [o]riginal [a]rbitration [a]ward are synonymous with, or are alter egos of the owners of each unit mentioned" in their proposed modified award. The complaint stated that Michele was "the sole member of 210 Charleston LLC," Betty owned unit 212, the Yanovers owned unit 105, Miller owned unit 104, and Saliba was the "sole member of 535 High Mountain Road, LLC," which owned unit 208.

During oral argument on the motion to confirm, the Yanovers, Saliba, Miller, and Peters asserted the award should be vacated because they never agreed to arbitration and did not understand their legal rights regarding arbitration. They also contended the court should not modify the award because there was no evident mistake made by the arbitrator. Since it was plaintiffs who provided the information relied upon by the arbitrator in issuing the award,

11

including the names in the award and the inclusion of assessments against people who were not parties to the arbitration, there was no mistake made by the arbitrator for the court to fix.

Saliba and Miller also argued that under the Condominium Act, N.J.S.A. 46:8B-1 to -38, plaintiffs were "developers," and not authorized to act as a board of directors might in levying an assessment.

The trial court entered an order granting plaintiffs' application, confirming and modifying the arbitration award to include the correct unit owners as plaintiffs proposed. In a written opinion, the court rejected defendants' contention that they had not agreed to arbitration. The court noted it was Peters who initiated arbitration and included the other defendants as claimants in her initial petition. The judge also stated that all defendants participated in the hearing. Therefore, they waived any argument that they did not agree to arbitrate. The court affirmed the award.

In considering plaintiffs' request to modify the award, the court found there was an evident mistake that permitted modification. He stated: "the arbitrator made a minor ministerial mistake in the award by not listing the correct owners to each unit . . . . Further, [d]efendants even admit in their

12

oppositions they do own the respective units named in the . . . award." Therefore, the court granted the modification as noted above.

On appeal, defendants assert the trial court erred in confirming the arbitration award because (1) there was no agreement to arbitrate; (2) the arbitration clause in the condominium association's by-laws was not enforceable because it did not clearly state the parties were giving up their right to pursue their claims in court; and (3) plaintiffs were "developers" as defined under the Condominium Act and therefore not entitled to impose an assessment on the minority owners.

Arbitration is "a favored means of dispute resolution." Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006). "The object of arbitration is the final disposition, in a speedy, inexpensive, expeditious, and perhaps less formal manner, of the controversial differences between the parties." Id. at 343 (quoting Carpenter v. Bloomer, 54 N.J. Super. 157, 162 (App. Div. 1959)). Therefore, our review of an arbitration award is narrow. Fawzy v. Fawzy, 199 N.J. 456, 470 (2009). "Otherwise, the purpose of the arbitration contract . . . would be severely undermined." Ibid.

N.J.S.A. 2A:23B-23 specifies the limited grounds upon which an arbitration may be vacated. Defendants rely on the following subsections:

13

a. Upon the filing of a summary action with the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:

(1) the award was procured by corruption, fraud, or other undue means;

. . . .

(5) there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection pursuant to subsection c. of section 15 of this act not later than the beginning of the arbitration hearing;

The party seeking to vacate the award bears the burden of establishing a basis to vacate. Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013). We review the trial court's decision regarding an arbitration award de novo. Ibid.; Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010).

We can swiftly dispense with defendants' argument that they did not agree to arbitrate. It was Michele who filed the demand for arbitration and listed the individual claimants as herself, Betty, Miller, Saliba, and the Yanovers. After plaintiffs' counsel informed AAA that Michele could not represent anyone because she was no longer licensed to practice law in New Jersey, Miller, the Yanovers, and Saliba advised they would be representing themselves. Betty provided a letter in which she authorized Michele to speak and act on her behalf

in the arbitration. The individual claimants then participated in the arbitration process and hearing.

We "consider the totality of circumstances to evaluate whether a party has waived the right to object to arbitration after the matter has been ordered to arbitration and arbitration is held." Wein v. Morris, 194 N.J. 364, 383 (2008). The factors to determine whether a party has waived its right to object to arbitration include: "whether the party sought to enjoin arbitration or sought interlocutory review, whether the party challenged the jurisdiction of the arbitrator in the arbitration proceeding, and whether the party included a claim or cross-claim in the arbitration proceeding that was fully adjudicated." Id. at 383-84.

The trial court's determination that defendants waived any argument that they did not agree to arbitration is supported by the record. Defendants submitted responses during pre-arbitration discovery regarding the merits of their claims. Saliba submitted a statement with exhibits outlining his objections to the special assessments; Miller also presented a letter outlining his objections to the assessment. In addition, defendants do not dispute that the hearing occupied two days. We are unaware of the extent to which witnesses testified and whether there was cross-examination.

15

Defendants did not object to arbitration. To the contrary, they demanded it. Thereafter, defendants conducted themselves as participants in the arbitration process. Their actions waived any later objection to arbitration.

However, in considering the multitude of errors that occurred in this arbitration process, commencing with the initial arbitration demand and continuing up to the erroneous naming of the parties in the award, we conclude that the cumulation of errors require we vacate the award and reverse the trial court's confirmation.

As stated, we do not know whether Michele's law license was active at the time of the arbitration proceedings. If it was not, she could only proceed as a pro se claimant, representing herself. The arbitrator would have to make the determination whether she could also represent Betty, not as her mother's attorney but under an appropriate power-of-attorney designation. It is unclear whether AAA or the arbitrator considered or accepted Michele's authority to represent Betty. If Michele was not legally authorized to represent Betty in the arbitration proceedings, then Betty did not participate, and the award was invalid as to her.

There are similar errors regarding the LLCs who owned the condominium units and whether they required representation. If Michele was not a licensed

attorney at the time of the arbitration, she could not represent 210 Charleston LLC—the entity that owned the condominium unit. Saliba could not represent 535 High Mountain Road LLC.

It is clear that if these were court proceedings, the LLCs had to be represented by a licensed attorney. See Rules 1:21-1(c) and 1:21-1B(a)(6); See also Senna v. City of Wildwood, 23 N.J. Tax 275, 277-78 (App. Div. 2006) (holding that "[t]he prohibition of lay representation of limited liability companies under Rule 1:21-1(c) is clear and unambiguous.").

It is less clear whether the applicable court rules also apply to arbitration proceedings as the issue has not been addressed by our courts. Several jurisdictions that have considered the issue have found that a nonlawyer's representation of a corporation or investor constituted the unauthorized practice of law. See Fla. Bar Re Advisory Op. on Nonlawyer Representation in Sec. Arb., 696 So.2d 1178, 1180, 1183 (Fla. 1997); NISHA, LLC v. TriBuilt Constr. Grp., LLC, 388 S.W.3d 444, 451 (Ark. 2012) (finding "a nonlawyer's representation of a corporation in arbitration proceedings constitutes the unauthorized practice of law.").

Because the parties agreed to arbitration in a private forum, the concerns underlying the court rules to protect the integrity of the proceeding may not be

17

as critical.  If a corporation or LLC makes a choice to be represented in a private forum by its own officer or employee, then it may not be against the public interest to permit a non-lawyer to engage in that activity.  But we cannot be certain that the LLCs here relinquished their right to representation.

AAA handled this case under its "Pro Se Case Administration Team" and provided the parties with a one-page information sheet.  It is unclear whether AAA or the arbitrator clarified with the individual claimants the representation issue regarding the LLCs that owned the units that were being assessed.  As stated, the correspondence was only sent to individuals—Michele, Saliba, the Yanovers, and Miller—all listing Michele's P.O. Box in Oregon as their address. The correspondence also included email addresses to the business entities.  The trial judge did not address the representation issue in his brief opinion affirming the award.

The ambiguity of the representation issue is reflected in the errors in the arbitration award.  The Prospect Plaza Board levied assessments against the proper owners of the condominium units.  In the award, the arbitrator listed assessments against the businesses that operated in the units.  But none of those businesses owned the units.  And one individual was listed—Hitesh Bhatt who was not part of the arbitration.

An additional irregularity in the arbitration procedure was that Prospect Plaza—the condominium association and the only entity authorized to impose an assessment against the owners of the units—was not a party to the arbitration. See N.J.S.A. 46:8B-14(b) (stating the association has the power of "the assessment and collection of common funds . . . ."). We query how an arbitrator could issue an award regarding an assessment on condominium owners without the condominium association being part of the arbitration. Although the verified complaint filed in Superior Court was later amended to include Prospect Plaza as a plaintiff seeking to confirm the award, the amendment only serves to corroborate the error in the arbitration proceeding without the association.

Under N.J.S.A. 2A:23B-23(a)(1), an arbitration award may be vacated where "the award was procured by corruption, fraud, or other undue means." Undue means exist where "the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record." Off. of Emp. Rels. v. Commc'ns Workers of Am., 154 N.J. 98, 111 (1998) (citing PBA Loc. 160 v. Twp. of N. Brunswick, 272 N.J. Super. 467, 474 (1994)).

We conclude that the cumulative errors discussed above are mistakes apparent on the record that constitute undue means sufficient to vacate the arbitration award. An unlicensed attorney attempting to represent other

claimants, unrepresented LLCs responsible for the ultimate payment of the award perhaps lacking an understanding of the non-representation, LLCs not named as parties in the arbitration found responsible for payment of the award, the entity that assessed the condominium owners not named as a party to the arbitration, and an award issued against entities not responsible for the assessment are material errors that cumulatively require vacating the award.

Because we vacate the award, we need not further address the trial court's modification of the award. If the parties proceed again to arbitration, any award shall properly name the owners of the units.

The trial court's order confirming and modifying the arbitration is reversed. The arbitration award is vacated. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4515-19