**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1522-23

FOUNTAIN PLAZA, LLC,

     Plaintiff-Appellant,

v.

PETROCK'S LIQUORS, INC.,

     Defendant-Respondent.

_____

          Submitted July 30, 2024 – Decided November 19, 2024

          Before Judges Rose and Gummer.

          On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. C-012021-23.

          Fred S. Dubowsky, attorney for appellant.

          Goldberg Segalla, LLP, attorneys for respondent (Anthony J. Golowski II, on the brief).

PER CURIAM

     On leave granted, plaintiff Fountain Plaza, LLC, appeals from an order

disqualifying attorney Arthur L. Skaar, Jr., as its counsel in this case based on

Rule 1:21-1(c) and Rule of Professional Conduct (RPC) 3.7 as well as an order denying its subsequent reconsideration motion. Based on our de novo review and reading of the plain language of those rules, we reverse.

Skaar is and always has been plaintiff's sole member. He also is an attorney with a solo practice and has certified he does not practice law through plaintiff. According to Skaar, plaintiff is "a passive business owning title to real estate."

On June 23, 1998, Skaar entered into and executed on his own behalf an easement agreement with defendant Petrock's Liquors, Inc. (PLI). In a certification he submitted in support of plaintiff's reconsideration motion, Skaar confirmed he had entered into that agreement and certified he had negotiated its terms with defendant's attorney.

As set forth in the easement agreement, Skaar owned property located on Amwell Road in Hillsborough, known as Block 163, Lot X5 on Hillsborough's tax map; PLI owned property located on Amwell Road, known as Block 163, Lot X4.A on Hillsborough's tax map. Skaar apparently years later transferred his interest in his property to plaintiff. PLI owns a building on its property that was constructed in 1978.

According to the easement agreement, Skaar had "a pending application for development before the Hillsborough Township Planning Board," which "call[ed] for a shared driveway and parking with [PLI]," an arrangement the parties to the agreement found "mutually beneficial." Under the agreement, Skaar was responsible for "construct[ing] the shared driveway and parking spaces at his sole cost and expense, but . . . the cost of maintenance and repair of the driveway and parking spaces [would] be shared by the parties equally." Attached to the agreement was an unsigned "Declaration of Cross-Access and Parking Easement."

In support of PLI's disqualification motion, Nicholas Petrock, the vice president of PLI, certified Skaar had approached him "to discuss a Cross-Access and Parking Easement (the 'Easement')," stating he would "arrange for the construction of, and all work related to, the Easement as he wanted patrons of his building to be able to park alongside PLI's building so they could enter the side of [plaintiff's] building." According to Petrock, Skaar "was solely responsible for constructing the Easement" and had "hired the contractors who designed and/or constructed the Easement." Petrock believed Skaar had arranged for the construction of a building owned by plaintiff on his Amwell

Road property. According to Petrock, construction of that building began in 2000 and was completed in February of 2001.

On February 15, 2001, Skaar on his own behalf and Petrock on behalf of PLI executed the Easement. Skaar also signed the Easement as the person who had prepared it. The Easement provided that Skaar owned property on Amwell Road, had obtained development approvals calling for a shared driveway and parking between Skaar and PLI, was receiving from PLI "a perpetual, non-exclusive easement," was granting to PLI a similar easement, and would "construct the shared driveway at his sole cost and expense." Skaar executed on his own behalf and entered into with PLI a "Corrective Amendment" to the Easement, on August 2, 2001, and a "Second Amendment" to the Easement on January 22, 2002.

According to Petrock, more than twenty years later in March of 2022, plaintiff demanded PLI divert water from its downspouts at its expense. In 2023, Skaar on behalf of plaintiff filed a complaint for a declaratory judgment and later an amended complaint in which, according to Skaar, plaintiff alleged its "consent to the discharge of water from defendant's property was terminated in

A-1522-23

2022."[1]  Plaintiff contends PLI had to have but does not have a written document supporting the grant of a "drainage easement over plaintiff's property."   PLI counterclaimed, asserting causes of action based on breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and negligence.

PLI moved to disqualify Skaar from representing plaintiff in this matter. Plaintiff moved to dismiss the counterclaim.  In a brief he prepared on plaintiff's behalf in opposition to the disqualification motion, Skaar conceded the court would have to conduct a hearing pursuant to Lopez v. Swyer, 62 N.J. 267 (1973), and that "the possibility of an evidentiary hearing and/or a trial of this matter [could not] be excluded."

On August 25, 2023, the trial court issued an order with an accompanying statement of reasons granting the disqualification motion based on Rule 1:21-1(c) and RPC 3.7 and denying the dismissal motion.  The court held Skaar, as plaintiff's "100% sole owner," could not represent plaintiff in this action pursuant to Rule 1:21-1(c).  The court characterized Rule 1:21-1(c) as making clear an "entity other than a sole proprietorship" could not appear in court

---

[1]  The parties did not include copies of their pleadings in the appellate record. We base our description of their pleadings on their submissions and the trial court's opinions.

without counsel and as "not allow[ing] attorneys to represent their own LLCs except for limited liability companies for the practice of law," citing Rule 1:21-1B.  The court also held RPC 3.7 prevented Skaar from representing plaintiff, finding:

> Attorney Skaar was the owner of [XXX] Amwell Road . . . at the time the easement was created; he drafted the easement; he arguably designed the disputed easement; he conveyed his interest in the property to [plaintiff] by deed dated May 12, 2003; and he is the sole member of the LLC that owns the property and holds the easement.  Attorney Skaar will undoubtedly be required to testify at trial wherein [plaintiff] must prove that PLI's discharge of water from its downspouts onto the easement is not a reasonable use of the easement.  Because attorney Skaar will be a primary witness at trial, he is barred from representing his LLC under [RPC 3.7].

Plaintiff moved for reconsideration of the provision of the order disqualifying Skaar.  On October 20, 2023, the court entered an order with an attached statement of reasons denying the reconsideration motion, finding plaintiff had failed to bring to the court's attention "new evidence or arguments . . . that would warrant reconsideration."

With leave granted, plaintiff argues in its merits brief that the trial court interpreted incorrectly Rule 1:21-1(c) and RPC 3.7.  In its responsive brief, PLI contends the trial court correctly interpreted those rules, but this court does not

need to decide that issue because the parties have "substantively settled" the case, rendering the appeal moot. In reply, plaintiff denies the parties settled the case. This court's subsequent efforts to determine the status of the parties' settlement efforts have not been fruitful. Accordingly, we address the merits of this appeal.

"[W]e review a trial court's decision on a motion for reconsideration under an abuse of discretion standard." In re Est. of Jones, 477 N.J. Super. 203, 216 (App. Div. 2023); see also Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). A court abuses its discretion when its "decision [is] made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis." United States v. Scurry, 193 N.J. 492, 504 (2008) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). "A trial court's interpretation of the law and the consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). "[A] trial court's legal conclusions are reviewed de novo." State v. Erazo, 254 N.J. 277, 297 (2023).

We also "review a decision to disqualify counsel de novo." Escobar v. Mazie, 460 N.J. Super. 520, 526 (App. Div. 2019); see also City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010) (finding "a determination of whether counsel

A-1522-23

should be disqualified is, as an issue of law, subject to de novo plenary appellate review"). In reviewing a disqualification order, we are mindful that "a person's right to retain counsel of his or her choice is limited in that 'there is no right to demand to be represented by an attorney disqualified because of an ethical requirement.'" Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 218 (1988) (quoting Reardon v. Marlayne, Inc., 83 N.J. 460, 477 (1980)). We are equally mindful that disqualification motions should be "viewed skeptically in light of their potential abuse to secure tactical advantage." Escobar, 460 N.J. Super. at 526.

In reviewing the trial court's disqualification order, we consider the direct and unambiguous language of Rule 1:21-1(c) and RPC 3.7. "[W]e review the meaning or scope of a court rule de novo . . . ." DiFiore v. Pezic, 254 N.J. 212, 228 (2023). "In that review, we apply 'ordinary principles of statutory construction to interpret the court rules.'" In re Protest of Cont. for Retail Pharmacy Design, 257 N.J. 425, 436 (2024) (quoting DiFiore, 254 N.J. at 228). Our review begins with the plain language of the rule, and we "ascribe to the [words of the rule] their ordinary meaning and significance . . . and read them in context with the related provisions so as to give sense to the [court rules]

as a whole."  DiFiore, 254 N.J. at 228 (alterations in original) (quoting Wiese v. Dedhia, 188 N.J. 587, 592 (2006)).

Rule 1:21-1(c) states that, unless otherwise permitted by other court rules, "an entity, however formed and for whatever purpose, other than a sole proprietorship shall neither appear nor file any paper in any action in any court of this State except through an attorney authorized to practice in this State." Thus, "Rule 1:21-1(c), with certain exceptions not applicable here, provides that a business entity, other than a sole proprietorship, is required to appear in court through an attorney authorized to practice law in the State."  Gobe Media Grp., LLC v. Cisneros, 403 N.J. Super. 574, 576 (App. Div. 2008); see also Senna v. City of Wildwood, 23 N.J. Tax 275, 278 (App. Div. 2006) (finding "[t]he prohibition of lay representation of limited liability companies under Rule 1:21-1(c) is clear and unambiguous."); Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 1:21-1(c) (2025) (discussing Rule 1:21-1(c)'s "bar on lay representation of corporations").

The trial court held "Rule 1:21-1(c) does not allow attorneys to represent their own LLCs, except for limited liability companies for the practice of law." But the Rule doesn't say that.  The Rule requires "an entity, however formed and for whatever purpose" to appear in court "through an attorney authorized to

9

practice law in this State." R. 1:21-1(c). It is undisputed Skaar is "an attorney authorized to practice law in the State." Ibid. The Rule bars a lay person from appearing on behalf of a business entity in court. But this case isn't about "lay representation" of a business entity. Senna, 23 N.J. Tax at 278. And nothing in Rule 1:21-1(c) prevents an attorney from representing a business entity in which the attorney has an ownership or membership interest. Rule 1:21-1B, which the court also cited, concerns "Limited Liability Companies for the Practice of Law." That rule does not apply because plaintiff is not a limited liability company for the practice of law. The trial court erred in applying Rule 1:21-1(c) to disqualify Skaar from representing plaintiff.

RPC 3.7 states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 or RPC 1.9.

A-1522-23

The trial court held that "[b]ecause attorney Skaar will be a primary witness at trial, he is barred from representing his LLC under RPC 3.7."

Based on the undisputed facts of the case, we agree Skaar "is likely to be a necessary witness." RPC 3.7(a). That finding, however, does not require Skaar's immediate disqualification. RPC 3.7 prevents a lawyer who "is likely to be a necessary witness" from acting "as advocate <u>at a trial</u>." (Emphasis added).

We reviewed RPC 3.7's language in <u>Escobar</u>, 460 N.J. Super. at 527, and held "RPC 3.7 is a rule addressed only to a lawyer acting as an advocate at trial." Based on our determination of the meaning of RPC 3.7's language, we found the trial court had erred in relying on RPC 3.7 to bar the attorney-witnesses from representing the defendant "at depositions or in any other pre-trial matters." <u>Ibid.</u>

In reaching that conclusion, we considered the American Bar Association's comments to the Model Rule of Professional Conduct 3.7 and the Association's concern that

> Because "[a] witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others," the jury may not understand "whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof."

A-1522-23

[Escobar, 460 N.J. Super. at 527 (quoting Model Rules of Prof'l Conduct r. 3.7 cmt. 2 (Am. Bar Ass'n 2018)).]

See also In re Op. No. 17-2012 of the Advisory Comm. on Prof'l Ethics, 220 N.J. 468, 478 (2014) (noting "[t]he official ABA comments to the RPCs can assist in interpreting them.").

We also considered Main Events Productions v. Lacy, 220 F. Supp. 2d 353 (D.N.J. 2002), an opinion written by Judge Dickinson R. Debevoise, who had "chaired the committee appointed by our Supreme Court in 1982 to review the ABA's proposed Model Rules of Professional Conduct and recommend to the Court whether they should be adopted in New Jersey in whole or part, thereafter commonly referred to as 'the Debevoise Committee.'" Escobar, 460 N.J. Super. at 528 n.4 (citing A. v. B., 158 N.J. 51, 59 (1999)). In Main Events, Judge Debevoise held "RPC 3.7(a) is a prohibition only against acting as an 'advocate at a trial'" and reversed as premature a magistrate judge's order immediately disqualifying the plaintiff's attorney. 220 F. Supp. 2d at 356.

Judge Debevoise compared the language of RPC 3.7 with the language of the attorney-witness rules in the Disciplinary Rules of the Code of Professional Responsibility, which preceded the Rules of Professional Conduct. Ibid. He found that "[u]nlike RPC 3.7, [the prior rules] clearly provided that an attorney could not accept employment where he could be a witness, or must immediately

withdraw upon learning or believing he would be a witness for his client or another party."  Ibid. (citing DR 5-101(B), DR 5-102(A), and DR 5-102(B)). Judge Debevoise held that construing RPC 3.7 to bar an attorney-witness from acting as an advocate only at trial

> not only is in accord with the plain language of the Rule, it also is consistent with its intent.  The Rule is designed to prevent a situation in which at trial a lawyer acts as an attorney and as a witness, creating the danger that the fact finder (particularly if it is a jury) may confuse what is testimony and what is argument, and otherwise creating an unseemly appearance at trial. Limiting the disqualification to advocacy at trial achieves these objectives and at the same time respects a client's right to be represented generally by an attorney of his choice.
>
> [Id. at 357.]

Judge Debevoise recognized an attorney-witness could be called to testify "at a pre-trial evidentiary hearing" and suggested "[t]he better rule would probably be to treat the hearing as if it were a trial and . . . in this case, retain other counsel to represent the client for the purpose of the hearing."  Ibid.

Citing factual distinctions between Escobar and this case, the trial court declined to apply our holding in Escobar and granted PLI's motion seeking Skaar's immediate disqualification.  But the factual differences between the cases does not change our interpretation of the plain language of RPC 3.7.  And

by disregarding the phrase "at a trial" in the language of RPC 3.7, the trial court failed to follow the "bedrock assumption [in statutory interpretation] that [the scrivener] did not use 'any unnecessary or meaningless language.'" Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587 (2013) (quoting Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 418-19 (2009)); see also Patel, 200 N.J. at 418 (in statutory construction, courts "strive 'to give effect to every word.'" (quoting Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety, 120 N.J. 18, 26 (1990))).

Because the trial court erred in applying Rule 1:21-1(c) to disqualify Skaar and erred in applying RPC 3.7 to disqualify him immediately, we reverse the October 20, 2023 order and the disqualification provision of the August 25, 2023 order. Defendant is free to renew, at an appropriate time, a motion to disqualify Skaar from acting as counsel at trial or a pretrial evidentiary hearing in which Skaar "is likely to be a necessary witness" in accordance with RPC 3.7.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1522-23